### BOOTH v. CROSBY.    (No. 6478.)*

(Court of Civil Appeals of Texas.    Austin. Jan. 10, 1923.    Rehearing Denied Feb. 21, 1923.)

1. **Evidence ☞155(10)—Evidence of vile epithets in discussing differences held admissible where punitive damages sought.**

Where both parties to an action are permitted to testify without objection to various controversies in which abuses and vile epithets were addressed to each other while discussing the differences about the subject-matter of the suit, it is not error to permit one to testify as to the vile epithets used to him on such occasions; and especially so where punitive damages are sought against the party using them.

2. **Evidence ☞155(8)—Where part of instrument introduced and relied upon by complaining party, whole instrument admissible by opposing party.**

Where parts of an instrument are introduced in evidence by the party complaining and relied upon by him, he cannot complain of the whole instrument being introduced in evidence by the opposing party.

3. **Trial ☞75—Case not reversed for evidence to which objection waived.**

Where counsel for plaintiff-appellant waives his first objection to the introduction of testimony, and the court sustains his second objection thereto, the case will not be reversed.

4. **Evidence ☞155(10)—Testimony of vile epithets used between parties to action admissible where plaintiff testified to bad feeling between parties.**

In an action on a note, where the plaintiff testified on both direct and redirect examination of the bad feeling existing between him and the defendant without objection, testimony of the use of vile epithets by plaintiff to defendant was admissible.

5. **Bills and notes ☞501—Bank statement for period subsequent to term of office of official held not admissible as against him.**

In a suit on notes and for the foreclosure of shares of bank stock and a deed of trust lien upon lands, where the defense admitted the notes and filed a cross-bill charging plaintiff with the conversion of bank stock, and asking judgment for their market value and for exemplary damages for the alleged willful and malicious conversion thereof by plaintiff, the exclusion from evidence of a certain bank statement, showing the condition of the bank a few days after defendant's relationship had ceased, was not error, for the reason that defendant could not be held responsible for a statement or act of other officials of the bank after his term of office had expired.

6. **Trial ☞133(6)—Remarks of counsel, where court promptly admonished jury to disregard them, held not prejudicial.**

Where defendant's counsel, in the presence and hearing of the jury, made a statement to the effect that plaintiff had been convicted of a criminal assault upon defendant, and where the trial judge promptly instructed the jury to disregard the statements of counsel, and that the inquiry should go no further than merely establishing the fact that an indictment had been returned, *held* not erroneous.

7. **Evidence ☞317(1) — Testimony of third party out of hearing and presence of party affected, not shown to be authorized, inadmissible.**

It is not erroneous to exclude testimony as to conversation with a third party out of the hearing and presence of the party affected thereby, and not shown to be authorized by such party.

8. **Trial ☞62(1)—Evidence offered in rebuttal of testimony of opposing party admissible.**

Evidence offered in rebuttal or explanation of the testimony of an opposing party is admissible.

9. **Torts ☞27—Admission of evidence as to financial condition of defendant, charged with withdrawing funds from bank, held admissible.**

In an action on notes and to foreclose a lien on bank stock and a trust lien on land, where defendant by cross-bill charged appellant with trying to crush him in his business dealings and in his financial standing in the community, and because of such willful conduct on the part of appellant defendant contended that he had been damaged financially, and defendant was charged by plaintiff with the conversion of $6,300, there was no error in the admission of testimony of defendant as to his financial condition at the time he withdrew such funds.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction April 4, 1923.

**10. Bills and notes &#9901;&#8658;501—Exclusion of evidence that defendant in suit on notes had left town, leaving unpaid debts, not erroneous.**

In an action on notes and to foreclose a lien on bank stock and a trust lien on real estate, the exclusion of testimony that defendant had left town without paying his grocery bill and market bill was immaterial and inadmissible.

**11. Appeal and error &#9901;&#8658;1002—Verdict based on conflicting evidence not disturbed.**

Where a jury's verdict is based on conflicting testimony, it will not be disturbed on appeal.

**12. Trial &#9901;&#8658;260(6)—Failure to instruct jury on good faith of plaintiff in withholding bank stock held not erroneous.**

In an action on notes and to foreclose a lien on bank stock and a trust lien on real estate, where the defendant charged plaintiff with the conversion of bank stock placed as collateral, the failure to charge the jury on the question whether the action of plaintiff in converting the stock was for the purpose of injuring defendant in his business or financial relations with the bank was not error, in view of the submission of the question by the court that, if the jury finds that appellant did willfully withhold the stock, it would be presumed that it was with the intent to injure the party against whom he was acting.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Suit by Z. A. Booth against H. D. Crosby. From a judgment for defendant, plaintiff appeals. Affirmed.

E. M. Dodson and Spivey, Bartlett & Carter, all of Marlin, for appellant.

T. F. Garver, of Topeka, Kan., and J. D. Williamson and Allan V. McDonnell, both of Waco, for appellee.

BLAIR, J. This suit was instituted by appellant, Z. A. Booth, against appellee, H. D. Crosby, to recover on a note dated August 31, 1918, for the principal sum of $36,450, bearing interest at 7 per cent., payable annually, and due on or before five years from date, executed by Crosby to Booth; and for the foreclosure upon 135 shares of stock of the First National Bank of Rosebud, Tex., pledged as collateral security for said note; also to recover on a note executed by Crosby to Booth, in the sum of $5,000, and for a foreclosure of a deed of trust lien upon certain lands in McMullen county, Tex., which was executed as security to both the note for $36,450 and the note for $5,000, appellant alleging the latter note was executed by Crosby to him as liquidated damages, collectable in the event of a breach of a certain contract for the sale of bank stock, executed simultaneously with the note for $36,450, and which said note was executed in payment of said bank stock; and although said note for $36,450 was not due, according to its face and tenor, appellant sought by this suit to mature same because of certain alleged breaches of the contract of sale of bank stock by Crosby; and appellant further alleging mutual mistake in leaving out of said written contract the agreement that whenever the appellee should pay or tender to plaintiff as much as $2,700 on said $36,450 note, stock in blocks of 10 shares should be released to appellee, but this provision should not apply to any moneys derived from dividends upon said stock contract to appellee; and prayed the court to reform said contract to that extent, and to write therein the true contract; and asked, in the alternative, for judgment for certain dividends to be paid upon the bank stock sold by appellant to appellee, and for certain excess salary paid appellee as president of the bank, which was to be credited upon said note for $36,450 as agreed.

Defendant admitted the execution of the note for the sum of $36,450, and the contract, also the execution of the note for $5,000, but alleged that the same was not liquidated damages, for breach of the contract in question, and denied any breach of said contract by him, and further alleged that certain credits were due him upon said note for $36,450, and asked that they be made on the note; and he denied any mutual mistake in failing to incorporate into the contract the matters alleged by plaintiff; and by way of cross-bill appellee charged appellant with the conversion of 40 shares of stock of said bank, and asked judgment for their market value at the time of the alleged conversion; and further for exemplary damages for the alleged willful and malicious conversion of said stock by Booth.

The case was submitted to the jury upon special issues, and the court entered judgment upon their findings, denying appellant the right to mature the note for $36,450 for the alleged breach of contract, and further denying him the right to have the contract reformed as prayed on the question of mutual mistake in leaving out the certain matters stated, and giving appellee judgment on his cross-bill for the net sum of $3,794.19, being the aggregate amount found by the court to be due him under the findings of the jury as the value of the bank stock converted by appellant Booth, and exemplary damages, together with interest thereon at 6 per cent. from April 30, 1921. Appellant's motion for new trial being overruled, he appeals; and the case is affirmed.

1. Appellant complains in his first assignment because of the admission by the court of certain testimony of disagreeable and ugly language and vile epithets used by appellant to appellee on numerous occasions while in appellee's bank, contending that the same

was irrelevant and immaterial to any issue in the case, and that the questions were too general, and that the time was not sufficiently stated to call attention of plaintiff to the particular occasion.

[1] We do not think the court erred in permitting the defendant to prove by plaintiff that on numerous occasions he did so use such vile epithets to appellee. It is an established rule that, where both parties are permitted to testify without objection to various controversies in which abuses and vile epithets were addressed to each while discussing their differences about the subject-matter of the suit, it is not error to permit one to testify as to the vile and ugly epithets used to him on such occasions, and especially so where punitive damages are sought against the party using them. G., C. & S. F. Ry. Co. v. Graham (Tex. Civ. App.) 175 S. W. 472, 474.

[2] 2. Appellant complains in his second assignment of error that the court committed error in permitting appellee to introduce in evidence the judgment in an injunction suit between the First National Bank of Rosebud and the plaintiff in this suit. We note from the record that the First National Bank of Rosebud, Tex., was the bank by which appellee was employed as president, and that the injunction suit, according to the appellant Booth's testimony, was instituted by the defendant, Crosby, against him, and was to enjoin the appellant, Booth, from going in and about said bank and disturbing its employees in any way in the regular course of their business. We note further from the record that both appellant and appellee had been permitted to testify concerning the injunction, and parts of said judgment had been introduced by appellant. It has been a well-settled rule that, where parts of an instrument were introduced in evidence by the party complaining and relied upon by him, he cannot complain of the whole instrument being introduced in evidence by the opposing party. G., C. & S. F. Ry. Co. v. Graham (Tex. Civ. App.) 175 S. W. 472, 474.

[3] 3. Where the record discloses that plaintiff's counsel waived his first objection to the introduction of testimony, and the court sustained his second objection thereto, the case will not be reversed.

[4] 4. Appellant's fourth assignment complains of the action of the court in permitting defense counsel to prove the use of vile epithets by plaintiff to defendant, contending that such testimony is not supported by the pleadings in the case. This we think to be a matter of evidence rather than of pleading, and since appellant had testified to their bad feelings without objection, both in his direct and redirect examination, we think the same rule of law as announced in assignment No. 1 herein is applicable.

[5] 5. The court finds no error in the fifth assignment complained of by appellant because of the court denying the introduction of a certain bank statement showing the condition of the bank on June 30, 1920, some few days after defendant's relationship with the bank had ceased. It is not shown for what purpose this evidence would have been material in the bill of exception; and for the further reason that appellee could not be held responsible for some statement or act of other officials of the bank after his term of office had expired.

[6] 6. Under appellant's sixth assignment of error, he complains of the remarks of counsel made in the presence and hearing of the jury, to the effect that plaintiff had been convicted of a criminal assault upon defendant. The record discloses that the trial judge promptly instructed the jury to disregard the statement of counsel, and that the inquiry should go no further than merely establishing the fact that an indictment had been returned. No injury being shown, we do not see how this could materially injure appellant in his rights. Authority, see Philadelphia Underwriters Agency v. Cheeves (Tex. Civ. App.) 193 S. W. 1091.

[7] 7. By his assignment No. 7, appellant complains of the action of the court in refusing to permit L. B. Dunn to testify about a conversation with D. C. Crosby, relative to the withdrawing of $6,300 from the bank, which was not in the presence and hearing of the appellee, and not shown to be authorized by him. It is a well-established rule that it is not error to exclude testimony of a third party out of the hearing and presence of the party affected thereby, and not shown to be authorized by such party.

8. In proposition No. 8, appellant objects to the action of the court in excluding the bank statement showing the condition of the Rosebud National Bank on or about September 30, 1920. This appears from the record to be come three or four months after appellee had ceased to act as president of said bank, and no proof was offered by appellant that such statement was made by or under the direction of appellee, nor is it shown that he knew anything of it. All the record discloses is that counsel stated to the court that they would show that appellee was the cause of the reduction of the surplus, as shown by the statement of the bank. We do not see that this is material to any issue in this case, and it would come within the rule announced under proposition No. 7 herein.

[8] 9. We find no error in the court permitting the appellee to testify to certain discussions and conversations relative to the election of nonresident directors, as complained of in proposition No. 9, for, where the record discloses, it was in rebuttal or explanation of the testimony of appellant, who had testified that nonresidents had been elected

on board of directors, for the purpose of showing that it was the policy of appellee to so conduct the banking institution to its injury.

[9] 10. We are of the opinion that no error was committed by the court in permitting the witness Crosby to testify to his financial condition at the time he withdrew the $6,300 from the Rosebud Bank, as complained of in proposition No. 10 by appellant. Appellee had filed his cross-action complaining of the conduct of appellant in trying to crush him in his business dealings and in his financial standing in the community, and because of such willful conduct on the part of appellant, appellee contended that he had been damaged financially. Appellee was also being charged with the conversion of this fund of $6,300 by appellant, and we find no error in permitting him to testify as to its disposition, under the circumstances of this case.

[10] 11. We find no error in the action of the court in refusing to permit the plaintiff to testify that the defendant had left Rosebud without paying his grocery bill and market bill, as we do not see any issue in this case where same would become material, and the bill fails to disclose its materiality.

[11] We are called upon by appellant in his assignments Nos. 12, 13, 14, 15. and 16 to pass upon the question of the sufficiency of the evidence to support the findings of the jury under issues No. 5, No. 6, No. 7, and No. 12 of the court's charge. We find that there is a conflict of evidence upon these issues submitted by the court, and, the jury having found upon special issues, this court will not disturb their finding. Where a jury's verdict is based upon conflicting testimony, it will not be disturbed upon appeal.

[12] By his assignment No. 17, appellant complains of the court's action in failing to submit to the jury the question of whether the action of appellant was for the purpose of injuring defendant in his business or financial relations with said bank. It seems to us that the court submitted the question raised by the pleadings in such manner that it could not be misunderstood by the jury, and one which would determine the issue in the case. If the jury finds that appellant did act willfully, maliciously, and oppressively, and without belief in good faith that he had the legal right under said contract to withhold said stock, it would be presumed that it was with the intent to injure the party against whom he was acting.

By his second assignment under proposition No. 17, appellant complains that the expression, "without belief in good faith," as used in said issue, was prejudicial to plaintiff, and imposed too heavy a burden upon him, and tends to convey the impression to the jury that he might have such belief without the same being in good faith. This does not, in our opinion, impose upon him an onerous burden, but to the contrary would probably limit the appellee's right to an answer to this question to the extent complained of by appellant.

After duly considering the assignments of error herein, we are of the opinion that the judgment of the trial court should be affirmed; and it is accordingly done.

Affirmed.