## RAMIREZ v. ACKER et al.

### No. 3363.

Court of Civil Appeals of Texas. Beaumont.

Jan. 30, 1939.

Rehearing Denied Feb. 2, 1939.

Clarence A. Miller and L. P. Lollar, both of Houston, for appellant.

Kayser, Liddell, Benbow & Butler, Jack Binion, and S. O. Lovejoy, all of Houston, for appellees.

O'QUINN, Justice.

This was a suit in trespass to try title, brought by appellant, Ramirez, against Mrs. Sophie Acker and her husband, William Acker, and W. C. Arnett and his wife, Lura Arnett, and Luke Wofford, and several others not necessary ·to further mention here because they were finally disposed of in the trial, and hence not parties to this appeal. Ramirez sought to recover "Lots 1, 2, 3, 4, 6, 7, 8, 9, and 10 of Tract No. 144, South Houston Gardens No. 6, Subdivision of the H. T. & B. B. R. R. Company, Abstract 1350, according to map or plat of record in Vol. 2, page 74 of the Map Records of Harris County, Texas, and according to map recorded in Vol. 240, page 346 of the Record of Deeds of Harris County, Texas, the said nine lots of said Tract 144, containing about three acres, more or less".

He also sought to recover "6,887.5 square feet of land adjacent to and immediately East of said Lot 144, South Houston Gardens No. Six, Harris County, Texas". He alleged that defendants Acker claimed lot 4 and the 6,887.5 square feet ·described in his petition, and that the defendants Arnett claimed lot 10, and defendant Wofford claimed lot 7 described in his petition. Since this appeal was perfected Ramirez and Wofford have settled their differences, and so this appeal relates only to lot 10 and the 6,887.5 square feet adjacent to it, claimed by the Arnetts, and lot 4 claimed by the Ackers.

Appellant further alleged that a certain quitclaim deed executed by him to defendant W. C. Arnett covering lot 10, a part of Tract 144, was obtained from him by W. C. Arnett by duress, and was therefore void, and asked that same be cancelled as a cloud upon his title.

Appellant plead and relied upon the ten years statute of limitation as a basis for his right to recover.

The defendants Ackers answered by general demurrer, general denial and plea of not guilty. Likewise the defendants Arnetts answered by general demurrer, general denial and plea of not guilty, as did defendant Wofford. The several parties defendant, the Ackers, the Arnetts and Wofford, filed separate answers and were represented by different counsel.

The cause was submitted to a jury upon special issues in answer to which they found: (a) That appellant Ramirez had not held peaceable and adverse possession

of lot 4, nor of lot 7, nor of lot 10, nor of the 6,887.5 square feet (the issue as to each being submitted separately) in Tract No. 144 South Houston Gardens No. 6, cultivating, using, or enjoying same, with the same enclosed alone or in connection with adjoining property by a substantial fence capable of turning cattle, for a period of ten years prior to April 9, 1936; and (b) that the execution of the quitclaim deed from Ramirez to W. C. Arnett conveying lot 10 was not obtained or executed by or under duress. On these findings judgment was rendered against appellant in favor of the defendants Ackers, Arnetts and Wofford. Motion for a new trial was overruled. The case is before us on appeal.

As before stated, after the appeal was perfected appellant and appellee Wofford settled their differences as to lot 7, so that this appeal affects only the Ackers and Arnetts.

■ The first assignment of error complains that the court erred in admitting in evidence, over appellant's objection, two contracts of tenancy executed by him, one to Mrs. B. A. Schramm and Miss Ruby H. Schramm authorizing him as their tenant to occupy and use lot 9, Tract 144 South Houston Gardens No. 6, one of the lots appellant sued for; and one to Jesse A. Schramm authorizing appellant as his tenant to occupy and use lot 8 Tract 144 South Houston Gardens No. 6, one of the lots appellant sued for. The tenancy acknowledgments were dated June 6, 1935. Appellant sued for the whole of Tract No. 144 South Houston Gardens No. 6, which included the lots claimed by appellees, and the lots 8 and 9 mentioned in the tenancy contracts. We think the instruments were admissible as going to the good faith and intent of appellant in his claim of title to the property, and as an admission against his interest, admitting that title to the lots was in another, but, as we view the record, we do not reach the question of error in admitting the instruments in evidence because appellant failed to preserve his exception to the court's ruling by bringing forward in the record a bill of exception to the ruling, which was necessary to a review of the matter. In other words error in the reception of evidence cannot be reviewed where the record contains no bill of exception thereto. There is no bill of exception in the record to the admission of the evidence complained. 3 Tex.Jur. Sec. 405, p. 578; Morris v. Simmons, Tex.Civ.

App., 138 S.W. 800, writ refused; Holt v. Cave, 38 Tex.Civ.App. 62, 85 S.W. 309, writ refused.

The second and third assignments complain of the admission of certain evidence in answer to questions. These assignments are in the same condition as the first assignment—there are no bills of exception in the record as required to preserve the exception to the court's ruling. They cannot be considered.

Assignment No. 4 insists that the court erred in submitting, over the written exceptions of appellant to the charge, special issues Nos. 2, 5, and 11. Special issue No. 2, reads:

"If you have answered special issue No. 1 'He did', and only in that event, then answer:

"Do you find from a preponderance of the evidence that John Ramirez would not have purchased said lot 4 from William Acker and wife, Sophie Acker, at any time during said period of ten years (if you have found that said Ramirez held peaceable and adverse possession thereof for a period of ten years)?"

"Answer, He would have, or He would not have, as you may find."

Special issue No. 1 inquired whether appellant Ramirez had held peaceable and adverse possession of lot 4 in Tract 144 South Houston Gardens No. 6, cultivating, using and enjoying same enclosed alone or in connection with adjoining property by a substantial fence capable of turning cattle, for a period of ten years prior to April 9, 1936. The jury answered this issue "He did not". In view of this answer, in consonance with the charge of the court, the jury did not answer special issue No. 2.

■ The objections of appellant to the court submitting special issue No. 2 were that it was not supported by competent testimony raising the issue, was a comment by the court upon the weight of the testimony, an evidentiary matter, and if at all relevant was covered by special issue No. 1, and was calculated to confuse and mislead the jury. The assignment is overruled. The question had for its purpose the testing of appellant's intent in claiming the property by limitation. While testifying, appellant answered that he would have bought the lot if the owner had come to him and offered to sell it to him. This was an admission that he did not own the lot, and was admissible as a

circumstance to be considered by the jury in finding as to whether he had been claiming the property adversely to the owner for the required period to ripen title by limitation. Cuniff v. Bernard Corporation, Tex.Civ.App., 94 S.W.2d 577, writ refused; Bennett v. Carey, Tex.Civ.App., 99 S. W.2d 1105; Thompson v. Moor, Tex.Com. App., 14 S.W.2d 803.

■ Special issues Nos. 5 and 11 were to the same effect except that No. 5 inquired as to Lot No. 10, and No. 11 as to the 6,887.5 square feet in controversy. For the same reasons as stated supra as to submitting special issue No. 2, the submission of these issues was proper. Appellant brought suit for the whole of Tract No. 144 South Houston Gardens No. 6. This Tract No. 144 was one of the subdivisions of South Houston Gardens, and numbered 6. Tract No. 144 contained some three acres of land, and was subdivided into eleven lots or parts, numbered 1 to 11. The record reflects that appellant resided upon lot 5, and had fenced parts adjoining this lot. This fence was from time to time extended. Appellant asserted title to the other lots by the ten years statute of limitation. He testified that he claimed all of Tract No. 144, and in answer to the question whether he claimed all of the ten lots other than the one on which he lived (lot 5), he said he did. He testified that he claimed one of the lots the same as he did another, and that if he had not claimed one of them he would not have claimed any of them, and that he claimed them all under the same claim of right, and that so far as he knew he did not have any better right to one lot than to another. He offered witnesses to show that he had all of Tract No. 144 under fence and had always claimed same. On the other hand, the record discloses that appellant executed tenancy contracts, one to Mrs. B. A. Schramm and Miss Ruby H. Schramm, under which he took possession of and used lot 9 of Tract No. 144, and one to Jesse A. Schramm under which he took possession of and used lot 8 of said Tract No. 144. Mrs. B. A. Schramm testified that Ramirez never claimed her lot (9) and that he'told her that he was not claiming it. Mrs. Ruby Schramm Plath testified that she was with her mother, Mrs. B. A. Schramm, at appellant's place in 1934, and again in 1935 at which time she saw appellant execute the tenancy contracts above noted. The court instructed the jury when the tenancy contracts were admitted in evidence that they could consider them only for the purpose of ascertaining the intent of appellant as to his occupancy and use of Tract No. 144 South Houston Gardens No. 6. Appellant himself testified *three different times* that if the parties owning the lots had come to him, even after he had fenced the lots, and offered to sell him the lots, he would have bought them at $150 per lot. While it is the law that one may buy his peace in order to hold property claimed by him, still all this testimony relative to his admissions and statements was admissible as going to show his intent in the matter, and was proper for the jury to consider in arriving at his intent. The only issue involved was whether appellant had been in actual possession of the land, claiming same adversely to the true owners. It was a question of fact *as to his intention during the prescriptive period.* Thompson v. Moor, Tex.Com.App., 14 S. W.2d 803; Nerio v. Christen, Tex.Civ. App., 189 S.W. 1038.

Appellant's fifth assignment complains that in presenting the case to the jury, counsel for Luke Wofford, a defendant, record owner of lot 7, claimed by appellant by virtue of the ten years statute of limitation, in effect told the jury that he did not think the jury would take the land in controversy from the defendants who were American citizens, and give it to an old Mexican who had not been naturalized, to which argument appellant's counsel then and there excepted on the grounds that same was inflammatory and an appeal to race prejudice, which exception was sustained by the court and the jury instructed not to consider same. Appellant insists that the argument was so inflammatory in its nature as that it, notwithstanding the instruction of the court not to consider it, tended to and probably did prejudice the jury against appellant, and so was reversible error.

The court approved the bill of exception with this qualification:

"Upon objection being made to the argument of Mr. Lovejoy, counsel for defendant Luke Wofford, the Court then and there sustained such objection and instructed the jury that they should not consider the argument, and that the plaintiff John Ramirez, though being a Mexican, and naturalized or unnaturalized, was entitled to the same consideration at the hands of the jury as any other litigant. Thereafter,

Mr. Binion, counsel for the defendants, Ackers and Arnett, made the closing argument for all defendants and in his argument specifically told the jury that the plaintiff, though being a Mexican, regardless of whether he was naturalized or unnaturalized, was entitled to the same consideration of the jury as any American citizen, and that the defendants in the case did not want a verdict at the hands of the jury based upon any prejudice against the plaintiff's nationality, or on account of his citizenship.

"Upon a hearing of a Motion for New Trial filed herein by plaintiff the defendants tendered as a witness B. L. Durst, the foreman of the jury trying the case, who testified that he paid no attention to such argument as outlined in the foregoing bill of exception and did not consider same in arriving at his verdict, and that same was not mentioned or discussed by any of the jurors while considering the verdict, and also testified as to the points at issue as between the jurors in considering their verdict and the testimony upon which the minds of the jurors finally turned in arriving at their verdict. A copy of the testimony of the jury foreman B. L. Durst is hereto attached, marked Exhibit A, and made a part of this qualification of the foregoing bill of exception as though fully set out herein. The said B. L. Durst was the only juror or other witness tendered by either the plaintiff or defendants on the matters involved in the foregoing bill of exception in the hearing of the plaintiff's motion for new trial.

"The foregoing bill of exception as herein qualified is found correct, signed and approved and ordered filed as part of the record in this cause, this 23rd day of November, A. D. 1937.

"Norman Atkinson, Judge,

"11th Judicial District of Texas."

■ The argument to which objection was taken, and is here complained, was made by counsel for defendant Luke Wofford who was the record owner of lot 7 in Tract 144. There was a special issue, No. 7, submitted to the jury as to whether appellant had held peaceable and adverse possession of said lot for ten years before the filing of the suit, which the jury answered against appellant. After this appeal was perfected Ramirez and Wofford settled their claims as to lot 7, and so that question is not here involved. Mr. Binion,

counsel for the defendants, the Ackers and Arnetts, claiming other lots, appellees here, as shown by the Court's qualification to the bill of exceptions, in closing the argument for defendants not only disavowed the argument complained of, but told the jury that the plaintiff, though he was a Mexican, regardless of whether he was naturalized or unnaturalized, was entitled to the same consideration of the jury as any American citizen, and that the defendants did not want a verdict at the hands of the jury based upon any prejudice against the plaintiff's nationality, or on account of his citizenship. This plain, candid and honest statement of counsel, which is to be commended, together with the instruction of the court telling the jury not to consider the objectional argument, we think cured the error. Moreover, on the motion for a new trial, it was shown by the foreman of the jury, the only one of the jurors offered by either party, that the matter was not discussed or referred to by any juror, and we think, that the argument was not considered. The trial judge heard the motion for a new trial, was conversant with all the proceedings in the trial of the case, including the matter here presented, and overruled same. In passing upon this question he exercised his discretion, and we think no abuse of that discretion is shown. 41 Tex.Jur. p. 819, Sec. 86; Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S.W. 808. The assignment is overruled.

What we have said disposes of appellant's Sixth Assignment relative to argument of counsel for defendant Wofford.

■ Assignments Seven, Eight and Nine complain of improper argument of counsel for defendants Ackers and Arnetts. They are presented together, and we shall so consider them. In effect they are: (a–7) That counsel told the jury that plaintiff's suit was one that "stinks" and that plaintiff was the victim of a scheme or design by somebody to use him to their advantage and not to the advantage of plaintiff, and that somebody ought to be indicted for filing and prosecuting the suit; it being urged that said argument was prejudicial in that it left the inference in the minds of the jury that plaintiff's counsel, or others, conspired with plaintiff to bring the suit for some malicious or fraudulent purpose; (b–8) that defendants were not going to pay "blood-money" in the form of a settlement as had been exacted from others who had made settlements, the

objection to said argument being that same was without support in the record and prejudicial; and (c-9) that the suit was brought primarily for the benefit of the Stanolind Oil Company, said argument was without evidence to support same and was prejudicial and calculated to deprive plaintiff of a fair and impartial verdict by the jury. The court approved these bills of exception presenting these matters with the qualification that no objections or exceptions were taken to any of said arguments when made. They appear for the first time in the motion for a new trial, but it is insisted that the arguments were so inflammatory in their nature as could not have been corrected by an instruction from the court. We think it was the duty of appellant to have promptly interposed any objection he may have had to either of the arguments at the time that they were made. It would have given the court an opportunity to have ruled on the objections and to have instructed the jury not to consider the argument if he thought same improper. We do not think the arguments, if improper, were such as that an instruction from the court to not consider same would not have cured same. The record discloses that appellant took his chances for a verdict, in so far as objections to the arguments here being discussed were concerned, without objections being made, and then after an adverse verdict resorted to assignments in his motion for a new trial to secure a new trial because of them. As we have said we think it was the duty of appellant to promptly make his objections to the argument at the time it was made, and thus give the court an opportunity to have instructed the jury not to consider the arguments, if he thought them objectionable. From a careful examination of the record we do not believe the arguments were such, as, if not justified by the facts and circumstances in evidence, to have been of such force and nature as that an instruction from the court would not have cured the error. 41 Tex.Jur. p. 823; Id. Sec. 89, p. 824; City of Waco v. Rook, Tex.Civ.App., 55 S.W.2d 649. We shall not undertake to set out the evidence reflected by the record that we think afforded a proper basis for the argument complained of in these assignments, but will say that, after carefully inspecting and considering the evidence consisting of 370 pages, we do not believe that the above urged errors show any reversible error, and so are accordingly overruled.

There is no assignment against the sufficiency of the evidence to support the jury's answer to Special issue No. 1, that appellant had not held in peaceable and adverse possession for ten years the property involved. This finding, in the absence of reversible error in the admission of evidence, or improper argument of counsel, which we hold is not shown, entitled appellees to the judgment rendered.

The judgment is affirmed.